IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.M., *a minor, by and through her parents and natural guardians*, MR. J.M. *and* MRS. J.M., <br><br> Plaintiffs, <br><br> v. <br><br> EAST ALLEGHENY SCHOOL DISTRICT, <br><br> Defendant. | 2:22-CV-00110-CCW |

## MEMORANDUM OPINION

Before the Court is Defendant East Allegheny School District's (the "District") Motion to Dismiss the Amended Complaint, ECF No. 18.  For the following reasons, the Court will grant in part and deny in part the Motion to Dismiss.[1]

### I.    Background

The following factual allegations are set forth in D.M.'s Amended Complaint and are accepted as true and viewed in the light most favorable to Plaintiffs for purposes of resolving Defendant's Motion.  D.M. is a minor, and a former student in the District.  Her parents, Mr. J.M. and Mrs. J.M, bring suit on D.M's behalf and in their own right.  D.M. first enrolled in the District as a seventh grader during the 2016 to 2017 school year.  ECF No. 15 ¶ 20.  Upon enrollment, the District identified D.M. as a special education student with specific learning disabilities and placed her in the Individualized Education Program.  *Id.* ¶¶ 12, 20–21.  In particular, D.M. had learning

---

[1] This Court has federal question jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1331, as they arise under Title IX (Count I), the Rehabilitation Act (Counts II & IV), the ADA (Counts III & V), and 42 U.S.C. § 1983 (Count VI).

disabilities in "basic reading, reading fluency, reading comprehension, and written expression." *Id.* ¶ 22.

In 2018, D.M. broke up with her boyfriend. *Id.* ¶ 25. As a result of this breakup, D.M. suffered pervasive bullying and sexual harassment at the hands of her peers. *Id.* ¶¶ 25–30, 33–35. Other students would ask her for sexual favors, call her disparaging names, send her violent threats online, and spread rumors to her family members that she had attempted suicide, distressing her household. *Id.* ¶¶ 26–28, 41, 134–35, 141.

The bullying and sexual harassment started in the fall of her freshman year and continued to worsen. *Id.* ¶¶ 39–41, 51. Repeatedly, D.M. and her parents reported these incidents to school officials. *Id.* ¶¶ 27, 30, 38–39, 42, 44. Her parents explained to school officials that D.M. was having trouble concentrating in her classes and asked for these issues to be addressed. *Id.* ¶¶ 30, 38. Dissatisfied with the school's response, Mrs. J.M. contacted the local police department regarding some of the violent threats that D.M. had received. *Id.* ¶ 43.

As a result of the bullying and sexual harassment, D.M. struggled both mentally and academically. *Id.* ¶¶ 29–30, 32–37. She was diagnosed with anxiety and depression and began attending weekly therapy sessions. *Id.* ¶ 29. To escape the harassment from her peers, she began hiding in the special education classroom, the nurse's office, or the bathroom. *Id.* ¶¶ 31–32. When she attended class, she had trouble concentrating and her grades began to decline. *Id.* ¶¶ 30, 33, 36–37, 44. She started after-school tutoring to address her declining grades. *Id.* ¶ 35. Aware that something was wrong, teachers would call her parents to inform them that D.M. was in a "downward spiral" and appeared "distracted" due to conflicts with other students. *Id.* ¶¶ 36, 44.

The bullying eventually escalated and, on December 18, 2018, D.M. was sexually assaulted by two male students in the men's bathroom. *Id.* ¶¶ 45–50, 52–58. Prior to this, the school had

been aware that one of the perpetrators had sexually assaulted others. *Id.* ¶¶ 39, 51, 64. A few weeks before, a teacher had witnessed him forcibly trying to kiss D.M. *Id.* ¶¶ 39, 51. Another female student had notified the school that this same male student had sexually assaulted her outside of school. *Id.* ¶¶ 51, 64, 103, 124.

The next day, D.M. reported the sexual assault to school officials, who sent her back to class with one of the students who sexually assaulted her. *Id.* ¶ 61. Also, the other student who sexually assaulted D.M. started telling other students that she performed sexual favors for him in the bathroom, and they began calling her a "slut." *Id.* ¶ 63.

After this incident, D.M.'s parents pulled her from the school and scheduled a meeting with school officials. *Id.* ¶¶ 65, 71. At the meeting, the school officials decided that she should be enrolled in the District's cyber program going forward. *Id.* ¶¶ 71, 73.

Upon starting the cyber program, D.M. alleges that her teachers "would simply drop off work to her, and no instruction was provided. *Id.* ¶ 74. Also, she describes how some of the assigned course work was never delivered. *Id.* ¶ 75. Her grades continued to decline, until her parents decided to remove her from the District and enroll her in the Pennsylvania Cyber Charter School. *Id.* ¶¶ 77–78.

D.M. continues to struggle with her mental health and the residual effects of the bullying, sexual harassment, and sexual assault. *Id.* ¶¶ 80–82. Her parents' health has deteriorated due to the stress. *Id.* ¶¶ 83–85, 134–35, 137. Her father had to take a leave of absence from his job pursuant to the Family and Medical Leave Act. *Id.* ¶ 86. Her family decided to relocate to enroll their students in a new school district. *Id.* ¶¶ 87–88.

D.M. and her parents filed this suit against the District in federal Court, and their operative Amended Complaint includes six claims relating to the school's alleged conduct regarding D.M.'s

asserted disability and the asserted sexual harassment and bullying she experienced. *See generally id.* In Count I, D.M. alleges that the District violated Title IX of the Education Amendments of 1972. *Id.* ¶¶ 90–109. In Counts II and III, D.M. alleges that the District violated § 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act with respect to D.M. *Id.* ¶¶ 110–25. In Counts IV and V, Mr. J.M. and Mrs. J.M. assert associational discrimination claims under the Rehabilitation Act and the ADA. *Id.* ¶¶ 126–142. In Count VI, D.M.'s parents assert a Fourteenth Amendment substantive due process claim under § 1983. *Id.* ¶¶ 143–150.

The District's partial Motion seeks to dismiss all of the claims except the Title IX claims in Count I. *See generally* ECF No. 18.

## II.        Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must
> plead to state a claim."  Second, the court should identify allegations
> that, "because they are no more than conclusions, are not entitled to
> the assumption of truth."  Finally, "where there are well-pleaded
> factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for
> relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").Finally, when deciding a Rule 12(b)(6) motion and as noted above, the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Thus, for the purpose of deciding the present Motion, the Court accepts as true the facts alleged in the Amended Complaint and views those facts in the light most favorable to the plaintiff.  *See Burtch*, 662 F.3d, at 220.

## III.   Discussion

The District's partial Motion to Dismiss challenges the claims under the Rehabilitation Act, the ADA, and the Fourteenth Amendment. ECF No. 18.  The District seeks to dismiss D.M.'s claims under the Rehabilitation Act and the ADA because she has not sufficiently pleaded that she has a disability, let alone a causal connection between her asserted disability and the school's alleged discriminatory conduct.  ECF No. 19 at 5–9.  In addition, the District argues that her parents' disability claims must be dismissed as they cannot establish an associational

discrimination claim. *Id.* at 9–11. Lastly, according to the District, the Fourteenth Amendment claim must be dismissed as the District's conduct was not deliberately directed at the parent-child relationship. *Id.* at 12–14.

> ### A.   Dismissal of D.M.'s Claims Under the Rehabilitation Act and ADA is Warranted

In Counts II and III of her Amended Complaint, D.M. alleges that the District violated the Rehabilitation Act and ADA by acting with deliberate indifference regarding her disability. ECF No. 15 ¶¶ 120–25. The District seeks to dismiss these claims because D.M. has not met the statutory definition of a disability under either statute and, furthermore, has not sufficiently pleaded a causal nexus between her disability and the discriminatory action. ECF No. 19 at 7.

Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination," with respect to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, § 202 of the ADA reads, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The United States Court of Appeals for the Third Circuit has recognized that the same standards apply to both statutes. *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013); *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). To prevail on a discrimination claim under the Rehabilitation Act or ADA, a student must show that she "(1) has a disability;  (2) was otherwise qualified to participate in a school program;  and (3) was denied

the benefits of the program or was otherwise subject to discrimination because of her disability." *Chambers*, 587 F.3d at 189.

### 1.     D.M. Has Sufficiently Alleged a Disability

With respect to the first element, D.M. states that she has a disability because she was "a special education student with specific learning disabilities who had the support of an Individualized Education Program."  ECF No. 15 ¶ 12.  The basis of her alleged disability is that she required special programming to assist her in "basic reading, reading fluency, reading comprehension, and written expression."  *Id.* ¶ 22.  Notably, D.M. does not allege that her mental health issues constitute a disability.

The District argues that D.M.'s special educational needs through the Individualized Education Program do not rise to the statutory definition of a disability.  ECF No. 19 at 7–8.  The Court disagrees.

As relevant here, the ADA and Rehabilitation Act define "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A);  29 U.S.C. § 705(20)(B).  A major life activity can include "learning, reading, [and] concentrating."  *Id.* § 12102(2)(A).  Additionally, a person "regarded as having such an impairment" also qualifies as an individual with a disability.   42 U.S.C. § 12102(1)(C).

Here, D.M. alleges that she struggled with reading and writing such that she required special instruction.  D.M. also alleges that the District regarded her as having special learning needs and enrolled her in a program that could adequately address her learning needs. Accordingly, the Court concludes that D.M. has sufficiently alleged that she is an individual with a disability with respect to her Rehabilitation Act and ADA claims in Counts II and III, as she

struggled with major life activities in the classroom and was regarded as being disabled through her enrollment in the Individualized Education Program.

### 2. D.M. Has Not Sufficiently Alleged a Causal Connection Between Her Asserted Disability and the Asserted Discriminatory Action

The District also contends that D.M. cannot satisfy the third element of her discrimination claims under the ADA and Rehabilitation Act—causation. ECF No. 19 at 7. To plead causation, D.M. must allege that she "was denied the benefits of the program or subject to discrimination because of her disability." *Chambers*, 587 F.3d at 189. As the Court already noted, D.M. only describes her struggles in "basic reading, reading fluency, reading comprehension, and written expression" as the basis for her disability. Although the Amended Complaint is replete with allegations regarding D.M.'s diagnoses of depression and anxiety, she does not allege that either or both of those diagnoses constitute a disability. Consequently, she cannot base an ADA or Rehabilitation Act claim on those allegations.

Under the Rehabilitation Act and ADA, a plaintiff cannot succeed on a discrimination claim "simply by proving (1) that [she] was denied some service and (2) [she] is disabled. The [school] must have failed to provide the service for the sole reason that the child is disabled." *K.J. v. Greater Egg Harbor Reg'l High Sch.*, 431 F. Supp. 3d 488, 501 (D.N.J. 2019) (quoting *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007)). This causation requirement is expressly written into both statutes. Section 504 of the Rehabilitation Act states that the discriminatory conduct is "solely by reason of her or his disability," and § 202 of the ADA similarly requires that the discriminatory conduct be "by reason of such disability." 29 U.S.C. § 794(a); 42 U.S.C. § 12132.

Taking the well-pleaded factual allegations as true, D.M. notes that she was first identified as a student with reading and writing needs as a seventh grader for the 2016 to 2017 school year.

8

ECF No. 15 ¶¶ 20–22.  Her problems at school, however, did not begin until she was a ninth grader

during the 2018 to 2019 school year.  *Id.* ¶¶ 24–25.  Her mental health diagnosis and academic

decline were a direct result of the pervasive bullying and sexual harassment that started in 2018.

*Id.* ¶¶ 25–27, 29–37.  The Amended Complaint states that "[p]rior to the summer of 2018, D.M.

did not suffer from any anxiety or mental health conditions," but was later "diagnosed with anxiety

and depression at the beginning of her freshman year due to the bullying and sexual harassment."

*Id.* ¶¶ 25, 29.  The Amended Complaint also notes that "prior to her freshman year, she spent 100%

of the school day in the general education classroom," and "[a]s the bullying continued, D.M.'s

grades continued to decline."  *Id.* ¶¶ 32–33.  These factual allegations do not satisfy the causation

requirement, because the Amended Complaint does not allege that the District's alleged

discriminatory actions were because of D.M's reading and writing disability.  Rather, the factual

allegations relate to school official's responses to D.M.'s worsening mental health issues, which

began in 2018, as opposed to her enrollment in the specialized learning program, in which she had

participated since 2016.

Accordingly, the Court will grant the District's Motion to Dismiss for Counts II and III but

provide Plaintiffs with leave to amend.

### B.    Dismissal of Mr. J.M. and Mrs. J.M.'s Claims Under the Rehabilitation Act and ADA is Warranted Because They Have Not Pleaded a Viable Associational Discrimination Claim

In Counts IV and V, Mr. J.M. and Mrs. J.M. assert an associational discrimination claim

under the Rehabilitation Act and ADA.  The District argues that Mr. J.M. and Mrs. J.M. have not

adequately pleaded an associational discrimination claim because neither parent sought a distinct

benefit or service from those sought by their daughter.  ECF No. 19 at 11.

A non-disabled individual can assert an associational discrimination claim under the

Rehabilitation Act and the ADA.  *See* 42 U.S.C. § 12112(b)(4) (allowing an individual to bring a

9

claim who was denied benefits "because of the known disability of [another] with whom the qualified individual is known to have a relationship or association"); *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405–06 (3d Cir. 2005); *Doe v. Cnty. of Ctr.*, 242 F.3d 437, 447 (3d Cir. 2001).

To succeed, a non-disabled individual must establish the following:  (1) he or she has an association with a disabled individual that is "logical and significant";  (2) the school knew of that association;  (3) the school discriminated against the non-disabled individual because of that association;  (4) the non-disabled individual suffered a direct injury because of the discrimination. *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 712 (W.D. Pa. 2015) (Conti, then-C.J.) (quoting *Schneider v. Cnty. of Will*, 190 F. Supp. 2d 1082, 1091 (N.D. Ill. 2002));  *D.C. v. Pittsburgh Pub. Sch.*, 415 F. Supp. 3d 636, 666 (W.D. Pa. 2019) (Horan, J.).

However, the Court need not fully address whether the parents met each element of this standard.  The Court has already dismissed D.M.'s discrimination claims under the Rehabilitation Act and the ADA for a failure to sufficiently plead the causation requirement between the District's actions and the proffered disability.  By extension, therefore, the parents cannot meet their own causation requirement.  An associational discrimination claim must show a "logical path" between the discriminatory actions and the non-disabled individuals' inability to access benefits or services. *J.C. v. Greensburg-Salem Sch. Dist.*, No. 18-1683, 2019 WL 3845749, at *9–10 (W.D. Pa. Aug. 15, 2019) (Horan, J.) (quoting *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 274 (3d Cir. 2014)).  Although there may be a logical path for discriminatory action because of D.M.'s mental health issues, the parents did not plead this as D.M.'s disability.  *See* ECF No. 15 ¶ 130 ("D.M. has a disability, which was reaffirmed by D.M.'s [Individualized Education Program] team after she was reevaluated.").  Because the facts as alleged show no causal nexus between D.M.'s

enrollment in the specialized learning program and the alleged discriminatory actions, the parents have not met this element.

Accordingly, the Court will grant the District's Motion to Dismiss the parents' claims under the Rehabilitation Act and the ADA. As before, the Court will permit the parents the opportunity to amend Counts IV and V to address the legal deficiencies highlighted above.

### C.     Dismissal of the Fourteenth Amendment Claim is Not Warranted Because Plaintiffs Have Pleaded With Sufficient Particularity

In Count VI, Mr. J.M. and Mrs. J.M. assert, pursuant to 42 U.S.C. § 1983, that the District violated their substantive due process rights under the Fourteenth Amendment by interfering with their liberty interest in their parent-child relationship. ECF No. 15 ¶¶ 147–50. The District argues that this claim should be dismissed because D.M.'s parents have failed to show that the District's conduct was deliberately directed at the parent-child relationship. ECF No. 19 at 14.

The Due Process Clause of the Fourteenth Amendment prohibits the government from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause protects "against governmental interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). One such liberty interest, considered among the oldest recognized by the Supreme Court, is the interests of parents "to direct the upbringing and education of children under their control." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925)).

This constitutional right, especially as it pertains to the school setting, is not absolute. *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005) ("Courts have held that in certain circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the school environment."); *J.S. v. Blue Mountain Sch. Dist.*, 650

F.3d 915, 933 (3d Cir. 2011).  There are circumstances that allow school officials to "impose standards of conduct on students that differ from those approved by some parents," so that they may "maintain order and a proper educational atmosphere."  *Gruenke v. Seip*, 225 F.3d 290, 304 (3d Cir. 2000).  That said, school officials cannot deprive parents of their constitutional right "to make decisions concerning their child."  *C.N.*, 430 F.3d at 184.

The Third Circuit has dismissed due process claims alleging a violation of the parent-child relationship at summary judgment because the facts did not implicate "matters of the greatest importance."  *See, e.g.*, *id.* at 184–85 (distributing a survey with questions about sexual activity and substance abuse did not infringe on the parents' liberty interest); *J.S.*, 650 F.3d at 934 (deciding that a student's use of social media did not trigger a parents' liberty interest).  Here, the factual allegations are of a much more serious nature.  The Amended Complaint describes how the parents repeatedly asked school officials to intervene when their daughter experienced pervasive bullying and sexual harassment, school officials failed to take action, and eventually the abuse culminated in their daughter being sexually assaulted.

The District is correct that to prevail on a due process claim for unconstitutional inference with the parent-child relationship, Mr. J.M. and Mrs. J.M. must show that the District deliberately intended to harm that relationship.  *Chambers*, 587 F.3d at 192; *McCurdy v. Dodd*, 352 F.3d 820, 829 (3d Cir. 2003); *Clark v. Conahan*, 737 F. Supp. 2d 239, 263 (M.D. Pa. 2010).  That said, a plaintiff can overcome a motion to dismiss and proceed to discovery after alleging facts that demonstrate a pattern of behavior, even if a party's specific intent is unknown at the time.  *Mammen v. Thomas Jefferson Univ.*, 462 F. Supp. 3d 518, 531–32 (E.D. Pa. 2020).  The plaintiffs in this case have alleged a pattern of behavior that could support this finding and, as such, should

be allowed to engage in discovery on this issue.  Accordingly, the Court will deny the District's Motion to Dismiss the due process claim.

**IV.      Conclusion**

For the foregoing reasons, the Motion to Dismiss filed by Defendant East Allegheny School District is hereby GRANTED IN PART and DENIED IN PART as further set forth in the attached Order.  Counts II, III, IV, and V of the Amended Complaint are hereby DISMISSED WITHOUT PREJUDICE.  The Motion to Dismiss is DENIED as to Count VI.  Plaintiffs D.M., Mr. J.M., and Mrs. J.M. shall have leave to file a Second Amended Complaint on or before October 14, 2022

DATED this 30th day of September, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record