IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.M., *a minor, by and through her parents and natural guardians*, MR. J.M. *and* MRS. J.M., *and* MR. J.M. *and* MRS. J.M., *in their own right*,<br><br>Plaintiffs,<br><br>v.<br><br>EAST ALLEGHENY SCHOOL DISTRICT,<br><br>Defendant. | 2:22-CV-00110-CCW |

## OPINION

Before the Court is Defendant East Allegheny School District's (the "District") partial Motion to Dismiss Plaintiffs' Second Amended Complaint, ECF No. 30, seeking dismissal of Counts II through VI. For the following reasons, the Court will GRANT IN PART and DENY IN PART the Motion.[1]

## I.   Procedural History

The Court has previously summarized the relevant procedural history in its opinion granting in part and denying in part the District's partial Motion to Dismiss the Amended Complaint. *See generally* ECF No. 25. Following that decision, Plaintiffs D.M., Mr. J.M., and Mrs. J.M. filed a Second Amended Complaint, re-alleging violations of Title IX of the Education Amendments of 1972 (Count I, alleged by D.M.), the Rehabilitation Act (Count II, alleged by D.M., and Count IV, alleged by Mr. J.M. and Mrs. J.M.), the Americans with Disabilities Act

---

[1] This Court has federal question jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1331, as they arise under Title IX (Count I), the Rehabilitation Act (Counts II & IV), the ADA (Counts III & V), and 42 U.S.C. § 1983 (Count VI).

(Count III, alleged by D.M., and Count V, alleged by Mr. J.M. and Mrs. J.M.), and 42 U.S.C. § 1983 (Count VI, alleged by Mr. J.M. and Mrs. J.M.).  *See generally* ECF No. 27.  The District then moved to dismiss Counts II through VI for failure to state a claim, arguing that Plaintiffs' amendments failed to cure the defects identified in this Court's prior opinion.

## II.    Factual Background

The following factual allegations are set forth in D.M.'s Second Amended Complaint and are accepted as true and viewed in the light most favorable to Plaintiffs.

D.M. is a former student in the District.  She first enrolled in 2016, and, at that time, the District identified D.M. as a student with specialized needs in reading and writing.[2]  ECF No. 27 ¶¶ 20–22.  In 2018, Plaintiffs allege that D.M. became the target of pervasive bullying following a breakup.  *Id.* ¶¶ 25–26.  As a result of the bullying, Plaintiffs allege that D.M. began to suffer from mental health issues and was subsequently diagnosed with anxiety and depression.[3]  *Id.* ¶ 29.  According to Plaintiffs, D.M. began experiencing suicidal ideations and had difficulty concentrating on her studies.  *Id.* ¶¶ 23, 31.  Plaintiffs describe D.M. missing class to avoid the bullying and struggling academically.  *Id.* ¶¶ 34, 35.

Mr. J.M. and Mrs. J.M.—D.M.'s parents—reported D.M.'s struggles to school officials on many occasions.  *Id.*  ¶¶ 31, 40, 44.  According to Plaintiffs, the District failed to reassess whether D.M. required additional special education supports to address her mental health impairments.  *Id.* ¶¶ 30, 32.  Plaintiffs allege that a teacher contacted the parents to say that D.M. had a 62% in her class and noted that she had "started on a downward spiral since the start of the new nine weeks." *Id.* ¶¶ 38, 39.  Another teacher said that she has "been distracted lately" because of conflicts with

---

[2] The Court will refer to D.M.'s struggles in "basic reading, reading fluency, reading comprehension, and written expression" as her specific learning impairments.  ECF No. 27 ¶ 22.

[3] Similarly, D.M.'s mental health issues, including anxiety, depression, and suicidal ideation, are referred to as her mental health conditions.  ECF No. 27 ¶ 23.

other students and has not been performing well in class. *Id.* ¶ 46. The pleadings describe the bullying worsening to the point that Mr. J.M. contacted the police. *Id.* ¶ 45.

As detailed in the pleadings, the bullying culminated in a sexual assault against D.M. *Id.* ¶¶ 47–60. Subsequently, Plaintiffs allege that D.M. reported the incident to a school official, who contacted the police. *Id.* ¶ 63. Plaintiffs further allege that D.M. had attempted to return to school but could not make it through the day because of her deteriorating mental health, including her anxiety, depression, and suicidal ideations. *Id.* ¶ 67.

Plaintiffs allege that another school official contacted Mrs. J.M. to say that he was concerned D.M. was "in a cycle in which her anxiety is controlling her ability to function successfully" and wanted to have a meeting to "address some of these issues." *Id.* ¶ 69. At the meeting, on January 8, 2019, Plaintiffs assert that the school officials sought to resolve these issues by enrolling D.M. in the District's cyber program. *Id.* ¶ 72. Plaintiffs describe the cyber program as devoid of any actual instruction or direction from the teachers, which caused D.M.'s anxiety to worsen because she worried about her declining grades. *Id.* ¶¶ 75–78. On January 30, 2019, D.M. disenrolled from the District. *Id.* ¶ 79.

Plaintiffs allege that the District's action caused the health of D.M., Mr. J.M. and Mrs. J.M. to deteriorate from the stress, forced Mr. J.M. to take medical leave, and caused the family to relocate to a new school district. *Id.* ¶¶ 80–90.

## III.        Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere

labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"). Thus, for the purpose of deciding the present Motion, the Court accepts as true the facts alleged in the Amended Complaint and views those facts in the light most favorable to the plaintiff. *See Burtch*, 662 F.3d, at 220.

## IV.     Discussion

In its partial Motion to Dismiss, the District again challenges the claims under the Rehabilitation Act, the ADA, and the Fourteenth Amendment.  ECF No. 31.  The Court will address each in turn.

### A.     D.M.'s Claims Under the Rehabilitation Act and ADA

In Counts II and III of the Second Amended Complaint, D.M. alleges disability discrimination in violation of the Rehabilitation Act and the ADA, respectively.  ECF No. 27 ¶¶ 111–37.  The Third Circuit has applied the same standards to disability discrimination claims arising under those two statutes.  *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013);  *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995).  A student alleging discrimination under either statute must show that she "(1) has a disability;  (2) was otherwise qualified to participate in a school program;  and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability."  *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).  In its Motion, the District renews its arguments that D.M. has not met the statutory definition of a disability—for either her learning impairments or her mental health conditions—and, furthermore, she has failed to plead any connection between her disability and the discriminatory action.  ECF No. 31 at 6–11.

#### 1.     D.M. Has Sufficiently Alleged a Disability

In her Second Amended Complaint, D.M. alleges two disabilities:  (1) her specific learning impairments;  (2) her mental health conditions, namely, anxiety, depression, and suicidal ideation. The District argues that neither qualifies as a "disability" under the Rehabilitation Act and ADA. The Court, however, has already held that D.M. sufficiently alleged that her learning disability qualifies as such under both the Rehabilitation Act and the ADA, as she was "a special education

5

student with specific learning disabilities who had the support of an Individualized Education Program." ECF No. 25 at 7 (quoting ECF No. 15 ¶ 12). Accordingly, the Court will reject without further analysis the District's argument that D.M.'s learning disability does not qualify as such.

To support its argument that D.M.'s mental health conditions do not qualify as a statutory disability, the District initially relies on *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184 (2002), in which the Supreme Court held that a medical diagnosis is insufficient to establish a disability under the ADA. ECF No. 31 at 8 (citing *Toyota*, 534 U.S. at 198). However, as recognized by the Third Circuit, *Toyota* has been superseded by the ADA Amendments Act of 2008, in which Congress broadened the definition of "disability" under the ADA. *Matthews v. Pa. Dep't of Corrs.*, 613 Fed. App'x 163, 167 (3d Cir. 2015). Accordingly, *Toyota* does not support the District's argument.

Turning to the text of the statutes, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20)(A)(i) (defining an individual with a disability under the Rehabilitation Act as someone with a mental or physical impairment that is a substantial impediment). A major life activity can include "learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Against this backdrop, courts have recognized that a mental health condition can qualify as a disability when it has substantially impaired one's everyday life. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (undisputed that certain mental health disorders "count[] as a mental impairment under the ADA"); *see also Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 692 (W.D. Pa. 2014) (Lenihan, J.) (finding "depression constitutes [a] mental impairment under the ADA"). A dismissal at the motion to dismiss stage is only appropriate when the plaintiff's complaint lacks

sufficient details regarding the severity of the mental health condition. *See, e.g.*, *Mundy v. City of Pittsburgh*, No. 2:22-cv-31, 2022 WL 17851629, at *7 (W.D. Pa. Dec. 22, 2022) (Horan, J.) (dismissing at the motion to dismiss stage when plaintiff failed to describe how her anxiety impacts major life activities).

Here, contrary to the District's arguments, D.M. has provided sufficient factual allegations that her mental health conditions substantially impaired her daily life. After the onset of her anxiety and depression, she alleges that she had difficulty concentrating in class, struggled academically, and experienced suicidal ideations. ECF No. 27 ¶¶ 23, 29, 32, 36–37, 39. Accordingly, the Court finds that D.M. has sufficiently alleged that her mental health conditions substantially limit a major life activity and therefore qualify as a disability under the Rehabilitation Act and the ADA.

> **2.      D.M. Has Sufficiently Alleged Discrimination Because of Her Mental Health Conditions, but Not With Respect to Her Learning Impairments**

The District argues that even if D.M. has plausibly alleged a disability, she has not established any connection between her purported disability and the District's discriminatory actions. Previously, the Court held that D.M. had not sufficiently alleged that the District discriminated against her because of her specific learning impairments, which the District knew of years before the alleged discrimination. ECF No. 25 at 8–9. The Court did not address, however, whether she had sufficiently alleged that the District discriminated against her because of her mental health conditions. D.M. has amended her allegations and now asserts that the District discriminated against her because of "her anxiety, depression, and ongoing academic struggles associated with her learning disabilities," and the Court will address both in turn. ECF No. 27 ¶ 127.

The text of both the Rehabilitation Act and ADA requires a connection between the plaintiff's disability and the alleged discriminatory conduct. *See* 29 U.S.C. § 794(a) (prohibiting discrimination "solely by reason of her or his disability"); *see also* 42 U.S.C. § 12132 (similarly prohibiting discrimination "by reason of such disability"). Thus, a plaintiff cannot succeed on a discrimination claim "simply by proving (1) that [she] was denied some service and (2) [she] is disabled. The [school] must have failed to provide the service for the sole reason that the child is disabled." *K.J. v. Greater Egg Harbor Reg'l High Sch.*, 431 F. Supp. 3d 488, 501 (D.N.J. 2019) (quoting *Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007)). D.M. has not provided any factual allegation that suggests the District discriminated against her *because of* her learning impairments. Indeed, D.M. alleges that the District accounted for her learning disability by, starting in 2016, providing a specialized program to address her learning difficulties. By contrast, D.M. alleges that when her mental health began to decline and she was diagnosed with anxiety and depression in 2018, the District began to engage in a pattern of discrimination. According to the factual allegations, teachers specifically noted that she was on a "downward spiral," "distracted," and "in a cycle of anxiety," yet failed to take any action. *Id.* ¶¶ 38, 46, 69. Thus, the Court finds that she has sufficiently alleged that the District discriminated against her because of her declining mental health.

Accordingly, the District's Motion to Dismiss Counts II and III will be GRANTED IN PART, to the extent that D.M. has not sufficiently alleged a connection between the alleged discrimination and her learning impairments, and DENIED IN PART, to the extent that D.M. has sufficiently alleged a connection between the alleged discrimination and her mental health conditions.

**B.**     **Dismissal of Mr. J.M. and Mrs. J.M.'s Claims Under the Rehabilitation Act and ADA is Warranted Because They Have Not Pleaded a Viable Associational Discrimination Claim**

In Counts IV and V, Mr. J.M. and Mrs. J.M. assert an associational discrimination claim under the Rehabilitation Act and ADA. The District argues that Mr. J.M. and Mrs. J.M. have not adequately pleaded an associational discrimination claim because neither parent suffered a direct injury as a result of alleged discrimination and, by extension, neither parent has been excluded from or denied benefits that the District should have provided them. ECF No. 31 at 11–14. The Court previously did not address the merits of Mr. J.M.'s and Mrs. J.M.'s associational discrimination claims because it had dismissed D.M.'s underlying discrimination claims. ECF No. 25 at 9–11. Because D.M.'s underlying discrimination claim has survived the motion to dismiss stage, the Court can now assess the merits of the associational discrimination claims brought by Mr. J.M. and Mrs. J.M.

Protections under the Rehabilitation Act and the ADA are not limited to those with a disability, but "extend to 'qualified individuals' who are discriminated against because of their relationship or association with individuals who have a known disability." *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 447 (3d Cir. 2001). Although the Third Circuit has yet to provide a standard for associational discrimination claims, district courts have articulated the following test:

> A plaintiff asserting an associational discrimination claim under the Rehabilitation Act and . . . the ADA must plausibly allege: (1) a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity discriminated against them because of that association; and (4) they suffered a direct injury as a result of the discrimination.

*S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 712 (W.D. Pa. 2015) (Conti, J.) (internal quotation marks omitted); *see also H.B. by & through Patricia F. v. Pittsburgh Pub. Sch.,* No. CV 19-1326, 2020 WL 2949367, at *5 (W.D. Pa. May 13, 2020) (Lenihan, J.) (applying same).

Beginning with the fourth requirement, parents of a disabled child must prove that they suffered a direct injury. *See Cnty. Of Centre*, 242 F.3d at 447, 452 (parents denied the ability to foster other children because of their HIV-positive child); *S.K.*, 146 F. Supp. 3d at 715 (W.D. Pa. 2015) (parent denied the use of a transportation service because of disabled child). Said another way, "indirect consequences" or "derivative-type injur[ies]" that stem from the direct discrimination of the child are insufficient to support this claim. *See United States v. Nobel Learning Cmtys., Inc.*, 676 F. Supp. 2d 379, 388 (E.D. Pa. 2009) (collecting cases that have dismissed claims of parents who have only suffered indirect injuries). A direct injury is "a separate and distinct denial of a benefit or service to a non-disabled person." *D.C. v. Pittsburgh Pub. Schs.*, 415 F. Supp. 3d 636, 666 (W.D. Pa. 2019) (Horan, J.).

In this case, the injuries that Mr. J.M. and Mrs. J.M. allege include their declining health from the stress, taking leave from work under the Family Medical Leave Act, and relocating to another school district for D.M. to finish her studies. These injuries, however, all derive from the alleged discrimination against their child. They argue that they suffered these injuries as a result of the District "continuously failing to provide sufficient supervision and support" for D.M. ECF No. 33 at 9. Crucially, they sought increased supervision and support from the District *for their child*. There is no allegation that the District discriminated against *them* because of their association with their child. In addition, Plaintiffs argue that by ignoring the parents' requests, *their child* was subject to escalating bullying. The parents' declining health, the decision to take leave, and relocating, which Plaintiffs allege were all a result of the discrimination, cannot constitute direct injuries because they derive from the District's actions taken against D.M. Moreover, Plaintiffs have not alleged that Mr. J.M. and Mrs. J.M., as parents, were denied a separate or distinct benefit. *See D.C.*, 415 F. Supp. 3d at 666–67.

Therefore, the Court finds that the direct injuries were against their child, not Mr. J.M. and Mrs. J.M., such that they cannot support an associational discrimination claim.  Accordingly, the Court will GRANT the District's Motion to Dismiss Counts IV and V.

### C.    Dismissal of the Fourteenth Amendment Claim is Not Warranted

The District seeks dismissal of the § 1983 claim, which alleges a violation of Mr. J.M.'s and Mrs. J.M.'s Fourteenth Amendment substantive due process rights.  ECF No. 31 at 14–16. But the Court previously denied the District's motion to dismiss this claim, which set forth the same arguments that the District presents in its renewed motion to dismiss.  Because the District has not provided any reason to deviate from the Court's prior decision, the Court will DENY the District's Motion to Dismiss Count VI.

## V.    Conclusion

For the foregoing reasons, the District's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART as further set forth in the attached Order.

DATED this 21st day of February, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record